NAHMIAS, Presiding Justice, concurring.
I join the Court's opinion in full, but write separately to explain that not until this case did I realize how badly off-track our case law on out-of-time appeals has ventured. It is unnecessary to overrule any of that precedent to decide this case given its particular context, but the Court's opinion sounds a clear death knell for two sets of our prior holdings, and a third set of our holdings should also be promptly jettisoned. I have authored a number of cases invoking these erroneous holdings and have joined many more opinions relying on them, but "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. Union Planters Natl. Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 93 LE 259 (1949) (Frankfurter, J., dissenting).
1. First, as the Court's opinion explains in footnote 2, our holdings in Carter v. Johnson, 278 Ga. 202, 205, 599 S.E.2d 170 (2004), and *349 Cobb v. State, 284 Ga. 74, 74, 663 S.E.2d 262 (2008), that trial courts have a duty to inform criminal defendants of their rights to appeal and thus defendants are entitled to an out-of-time appeal if not so advised, rests on Carter's misreading of the Court of Appeals' case it quoted, finds no support elsewhere in the law, and indeed contradicts cases like Barlow v. State, 282 Ga. 232, 233, 647 S.E.2d 46 (2007). We can correct this aspect of Carter and Cobb someday, but it is of limited import - we have not mentioned the holding in the decade since Cobb- perhaps because trial courts often gratuitously advise defendants of their appeal rights and because most out-of-time **883 appeals are properly focused on the shortcomings of counsel rather than the court.
2. The much more significant consequence of the Court's opinion, as suggested in footnote 3, will follow from our belated acknowledgment that the analysis of Sixth Amendment ineffective assistance of counsel claims involving the failure to file a timely appeal from a criminal conviction is controlled by the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In the nearly two decades since that case was decided, Georgia appellate courts have cited the pertinent parts of Flores-Ortega only once in the out-of-time-appeal context, in White v. State, 277 Ga. 647, 594 S.E.2d 329 (2004). (By contrast, the Eleventh Circuit has dozens of cases applying Flores-Ortega.) In White, we recognized in the context of a motion for out-of-time appeal from a conviction after trial that to obtain an appeal, the defendant "need only show that the procedural deficiency [in not filing a timely appeal] was due to counsel's failure to perform his duties," and he does not need " 'to demonstrate that his hypothetical appeal might have had merit.' " Id. at 648, 594 S.E.2d 329 (quoting Flores-Ortega, 528 U.S. at 486, 120 S.Ct. 1029 ).
Although Flores-Ortega itself involved a defendant whose conviction was by guilty plea, see 528 U.S. at 473, 120 S.Ct. 1029, we ignored the case in that context until our attention was drawn to it by the brief of a pro se appellant - Ringold. The U.S. Supreme Court has authoritatively held that the usual actual-prejudice standard for ineffective assistance claims (which requires the defendant to show that his counsel's deficiency had a reasonable probability of affecting the outcome of the proceeding) is not applicable in this context (because if counsel was deficient in filing a timely appeal, the defendant was deprived of his appellate proceeding entirely ). See id. at 481-486, 120 S.Ct. 1029. Yet this Court and the Court of Appeals have in hundreds of cases required defendants whose convictions came by guilty pleas to show that they could actually prevail in an appeal before allowing them that appeal out-of-time. We were wrong to do so, and we should overrule those erroneous holdings and come into compliance with Flores-Ortega at the first available opportunity.
3. The final set of holdings that this case has caused me to understand are unsupportable - holdings that do not require discussion in the Court's opinion but that seem to lie at the root of much of the confusion in this area - began with this Court's divided opinion in Morrow v. State, 266 Ga. 3, 463 S.E.2d 472 (1995). There the majority held that "an appeal will lie from a judgment entered on a guilty plea only if the issue on appeal can be resolved by facts appearing in the record." Id. at 3, 463 S.E.2d 472. For this proposition, the majority cited only Smith v. State, 253 Ga. 169, 316 S.E.2d 757 (1984). Smith held **884 that "[w]here the question on appeal is one which may be resolved by facts appearing in the record, ... a direct appeal will lie," id. at 169, 316 S.E.2d 757, but Smith did not hold that a defendant who pleads guilty is authorized to appeal only in that situation. Morrow was followed by Caine v. State, 266 Ga. 421, 467 S.E.2d 570 (1996), another divided opinion where the majority held that "the merits of Caine's appeal can be addressed if, and only if, the questions that he seeks to raise on appeal may be resolved by facts appearing in the record," and after reviewing his claims and determining that he could not prevail on the existing record, dismissed his appeal rather than simply affirming the judgment. Id. at 421-422, 467 S.E.2d 570.
Soon thereafter came Smith v. State, 266 Ga. 687, 470 S.E.2d 436 (1996), a third divided opinion where the majority, citing Morrow *350 and Caine, held that "[a] criminal defendant has no unqualified right to file a direct appeal from a judgment of conviction and sentence entered on a guilty plea." Smith, 266 Ga. at 687, 470 S.E.2d 436 (emphasis added). This notion that a defendant who pleads guilty is "entitled" to an appeal only if the issues he seeks to raise can be resolved in his favor based on the existing record has become baked into our out-of-time-appeal case law, see, e.g., Houston v. State, 302 Ga. 35, 37, 805 S.E.2d 34 (2017) ; Mims v. State, 299 Ga. 578, 580, 787 S.E.2d 237 (2016) - with an awkward exception for defendants who plead guilty but appeal only after having a motion to withdraw the guilty plea denied, see Carter, 278 Ga. at 204, 599 S.E.2d 170.
Having now reflected upon it, I see that this notion is entirely unsound. The General Assembly has provided in plain language that criminal defendants may appeal their judgments of conviction and sentence (or a subsequent final judgment entered after a motion for new trial, motion to withdraw plea, etc.) without any distinction as to whether the judgment results from a guilty plea or a verdict after trial. See OCGA § 5-6-33 (a) (1) ("[T]he defendant in any criminal proceeding in the superior, state, or city courts may appeal from any sentence, judgment, decision, or decree of the court, or of the judge thereof in any matter heard at chambers."). See also OCGA § 5-6-34 (a) ("Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state: (1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35...."). The dissents in Morrow, Caine, and Smith pointed out this undifferentiated statutory right to appeal, each time with no response by the majority opinion.
**885 The fact that a defendant who pleads guilty has a right to appeal does not mean, of course, that he wins the appeal. He must be able to show reversible error, and he must do so on the existing record. This is a fundamental principle of appellate practice that applies to all appellants, civil and criminal, whatever proceedings (pleadings, motions, hearings, trials, or combinations thereof) may have led to the appealable judgment. See, e.g., Tolbert v. Toole, 296 Ga. 357, 363, 767 S.E.2d 24 (2014) ("It is [the appellant's] burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal."); Dept. of Human Resources v. Allison, 276 Ga. 175, 178, 575 S.E.2d 876 (2003) ("[T]he burden is on the appellant to show error by the record ...." (citation and quotation marks omitted) ); Branch v. Branch, 194 Ga. 575, 575, 22 S.E.2d 124 (1942) ("One who assigns error must show error by the record."). See also Caine, 266 Ga. at 423, 467 S.E.2d 570 (Benham, C.J., dissenting) (recognizing that our holding in the 1984 Smith case was simply " a restatement of the judicial maxim that an appellate court is required to decide cases on the facts contained in the record").
The larger the record, the greater the opportunity to show error on the record, so it is generally harder to successfully appeal from a guilty plea (where the record is usually limited to the indictment, plea hearing transcript, plea forms, and judgment) than from the denial of a motion to withdraw a guilty plea (where the record may be supplemented with an evidentiary hearing) than from a trial (with a full record) than from the denial of a motion for new trial (where the record may again be supplemented). We have discussed this practical reality before:
While a defendant does not waive consideration of merger issues by pleading guilty, his guilty plea does waive the expansion of the factual record that occurs with a trial. The practical effect of that waiver will usually mean that he cannot establish (and the court cannot discern) that any of his convictions merged, particularly as a matter of fact, based on the limited record. In this respect, merger claims in guilty plea cases are like other claims that a defendant who pleads guilty may try to raise but rarely will be able to establish based on the limited record.
See Nazario v. State, 293 Ga. 480, 488-489, 746 S.E.2d 109 (2013) (emphasis omitted).
*351 If an appellant cannot sustain his enumerations of error based on the existing record, the appellate court normally just affirms the trial court judgment. See, e.g., Tolbert, 296 Ga. at 363, 767 S.E.2d 24 ;
**886 Allison, 276 Ga. at 178-179, 575 S.E.2d 876 ; Branch, 194 Ga. at 578, 22 S.E.2d 124. As best I can tell, nowhere else in Georgia appellate law have we taken the peculiar approach we took in Caine, examining the record to see if the appellant could prevail on the merits of his appeal and, if not, holding that he could not appeal in the first instance. See Caine, 266 Ga. at 422, 467 S.E.2d 570 ("The issues which Caine raises cannot be resolved only by facts appearing in the existing record. Accordingly, he was not entitled to file a notice of direct appeal and his appeal must, therefore, be dismissed.").
Our holdings in Morrow and its many progeny also run afoul of the prejudice analysis prescribed in Flores-Ortega. Our cases say that defendants who plead guilty are not entitled to an out-of-time appeal unless they can show that their claims would prevail in the appeal they seek, see, e.g., Mims, 299 Ga. at 580-581, 787 S.E.2d 237, but the U.S. Supreme Court has squarely held that the prejudice resulting from the failure to file a timely appeal by counsel who represented a defendant convicted by guilty plea is not to be determined based on whether the defendant would have prevailed in a timely appeal. See Flores-Ortega, 528 U.S. at 483-486, 120 S.Ct. 1029. Accordingly, we should promptly overrule the Morrow-based set of holdings as well, and restore appeals from convictions based on guilty pleas to the normal law of appellate practice.
4. What will be the practical effects of overruling Morrow and its followers and complying with Flores-Ortega? Trial courts will grant more motions for out-of-time appeal, particularly in guilty plea cases, where the motions can no longer be denied on the ground that the defendant cannot show on the existing record that his claims will prevail on appeal, as well as in cases where defense lawyers failed to consult with their clients about filing a timely appeal or consulted but then failed to abide by the defendant's request to file an appeal. These cases will still come to the appellate courts, but more will come as granted out-of-time appeals, with the defendants represented by counsel, rather than as pro se appeals from the denial of a motion for an out-of-time appeal. The defendants thus will have the benefit of counsel to "review[ ] the record in [their] case[s] in search of potentially meritorious grounds for appeal," Flores-Ortega, 528 U.S. at 486, 120 S.Ct. 1029, although their lawyers will still be required to show reversible error on the existing record, meaning that it will still be difficult to prevail on appeals from guilty pleas. And if we decide that defendants who appeal directly from guilty plea convictions cannot prevail, we will affirm their convictions rather than dismiss their appeals under Caine. These will be significant changes in how appeals from criminal convictions are adjudicated in Georgia, but none of them will be earth-shattering.
**887 This case does not require us to make those changes, as this is not an appeal directly from a guilty plea conviction and the Court properly applies Flores-Ortega rather than Morrow and its ilk. Cases directly implicating those precedents will come before us soon, however, and it is clear what we must do then.