This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41641**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**ANTHONY PEÑA,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief in the above-entitled cause, pursuant to this Court's notice of assignment to the general calendar with modified briefing. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in the Administrative Order in *In re Pilot Project for Criminal Appeals*, No. 2022-002, we affirm for the following reasons.

**{2}** The State appeals from the district court's grant of a new trial based on newly discovered ballistic evidence. [BIC 1] Defendant was charged with four crimes—two counts of second degree murder, one count of tampering with evidence, and one count of conspiracy to commit murder. [BIC 1] At his first trial, the State presented evidence that both victims were injured with birdshot from a shotgun, but were killed by .223 caliber bullets fired from a rifle. [BIC 2, 12-13] Despite that evidence, the State's theory of the case was that Defendant killed the first victim with the .223 bullet while Defendant's coconspirator killed the second victim with a shotgun, and the jury was given an accomplice liability instruction related to the second victim's death. [BIC 3; 2 RP 308] Defendant was convicted of the lesser included offense of voluntary manslaughter of the second victim, tampering with evidence, and conspiracy, but the jury deadlocked with regard to the first victim. [BIC 2] The State then prepared to retry Defendant on the remaining count. [BIC 2]

**{3}** Between Defendant's first and second trial, the State received ballistic testing results of projectiles removed from both victim's bodies. [BIC 1-2] The State had negligently failed to request the testing before Defendant's first trial. [Id.] The ballistic evidence showed that (1) some bullet fragments in the first victim's body were not related to the incident involving Defendant, but rather "legacy bullets" from an earlier incident; and (2) the second victim was killed by a .223 caliber bullet and not shotgun pellets like the State argued at Defendant's first trial. [BIC 3] At Defendant's retrial on the deadlocked second degree murder charge, the State's theory of the case was that Defendant fired the rifle using .223 caliber bullets that killed the victim based on Defendant's DNA being present on the rifle. [BIC 7, 11-12, 15-16] A jury acquitted Defendant. [BIC 3] Defendant then moved for a new trial on the three convictions from the first trial based on the newly discovered ballistic testing evidence as well as evidence about the tampering charge and self-defense theory from a witness who had not testified at the first trial. [BIC 3; 3 RP 580-83]

**{4}** In the district court, the State argued that its theory had always been that Defendant fired three shots and killed both victims. [7-25-2023 CD 2:17:01-2:18:02] The district court recalled that the State's theory and evidence showed two shooters and requested that the State provide citations to trial testimony to support the single-shooter theory from both the first and second trials. [7-25-2023 CD 2:18:02-2:21:20, 2:22:31-2:23:08, 2:26:19-2:26:36] The State agreed, and at a reconvened hearing, offered testimony from the second trial [8-22-2023 CD 1:36:43-1:41:08] and indicated that it had not reviewed the first trial transcript. [8-22-2023 CD 1:42:44-1:42:51] The district court explained that, "if this was the State's theory from the very get go, then I would assume that there would have been some testimony at the very first trial that would support the theory, as opposed to the second trial when the State learned the issue and maybe attempted to make room for it in the facts of the case." [8-22-2023 CD 1:43:28-1:43:56] In a written order, the district court granted Defendant's motion for a new trial, citing only the new ballistics evidence and not the additional witness. [3 RP 641-42]

**{5}** We "will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*,

2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "Because the function of passing upon motions for new trial on newly discovered evidence belongs naturally and peculiarly, although not exclusively, to the trial court, the discretion of a trial court is not to be lightly interfered with as to the granting of a motion for new trial." *Id.* (text only) (citations omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Aguilar*, 2019-NMSC-017, ¶ 28, 451 P.3d 550 (internal quotation marks and citation omitted). And although we review for an abuse of discretion, "a much stronger showing is required to overturn an order granting the new trial than denying a new trial." *Id.* ¶ 29 (internal quotation marks and citation omitted).

**{6}** A motion for new trial based on newly discovered evidence must establish:

> 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

*Garcia*, 2005-NMSC-038, ¶ 8 (citation omitted).

**{7}** The State contends that the district court erred in finding that the ballistic testing evidence met all six factors, and presents unique arguments for each factor on appeal. [BIC 20-27] To frame the argument about the factors on appeal, the State (1) concedes that its theory at the first trial was that Defendant shot only the first victim, but (2) identifies evidence from the first trial to support a conclusion that a single rifle killed both victims, and (3) contends that the jury must have disregarded the State's theory at the first trial that Defendant shot the first victim and was accountable for the second victim's death on a theory of accomplice liability. [BIC 19-20] However, our review shows that in the district court, the State maintained that its position had always been that Defendant shot both victims, provided no support for that theory, and only argued that the first and third factors were not met in its response to Defendant's motion [3 RP 594] at the motion hearing. [7/25/2023 CD 2:16:50-2:24:10; 8/22/2023 CD 1:36:00-1:46:47] As such, the State failed to preserve its arguments related to its view of the basis for the first jury's verdict and the other four factors. *See State v. Janzen*, 2007-NMCA-134, ¶¶ 10-11, 142 N.M. 638, 168 P.3d 768 (explaining that the State is required to comply with preservation requirements when it takes an appeal from a district court order, and what is required to preserve an argument for our review). Nor does the State demonstrate that it preserved the issue whether the new ballistics evidence impacts all three convictions. [BIC 21] Because these arguments were not preserved, and the State does not provide an alternative reason why we should consider unpreserved arguments, we decline to address them further. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."); *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**{8}** The State argues that the district court erred under the first factor by finding that the ballistic testing evidence "will probably change the result if a new trial is granted." *Garcia*, 2005-NMSC-038, ¶ 8. The State asserts that Defendant cannot explain why a new jury would reach a different result based on the ballistic testing evidence because the evidence is not relevant to Defendant's convictions. [BIC 21-22] "The probability of the new evidence changing a verdict is a question addressed to the sound discretion of the trial court." *Id.* ¶ 9 (internal quotation marks and citation omitted).

**{9}** Here, the district court found that the ballistic testing evidence would probably change the result because "as shown by the second trial in this case, the newly discovered evidence did change the outcome." [3 RP 641] The district court additionally stated at the motion hearing it believed that the ballistic testing evidence would probably change the result because the evidence directly contradicted the State's theory of the case at the first trial. [BIC 3] Because the State presented evidence at the first trial that the second victim was killed by Defendant's coconspirator with a shotgun and not a .223 caliber bullet, the evidence bears directly on the State's theory of accomplice liability, on which the jury was instructed. [2 RP 304; 2 RP 308; 8/22/2024 CD 1:43:25-40] The State also admits in their brief in chief that its theory "did not comport with the evidence adduced at the first trial." [BIC 3-4] As such, "[w]ith the additional evidence a jury could well have reached a different result." *Id.* ¶ 11 (citation omitted).

**{10}** To the extent the State argues the district court erred because the ballistic testing evidence actually strengthens the State's case compared to the first trial [BIC 4-5] or that the district court erred because there was sufficient evidence to convict Defendant [BIC 17-18], we disagree that the State's view of the evidence demonstrates a manifest abuse of discretion. The district court exercises its discretion to determine only "[t]he probability of the new evidence changing a verdict." *Id.* ¶ 9 (internal quotation marks and citation omitted). The present case involves a unique situation. At the first trial, Defendant was convicted, possibly as an accessory, for killing the second victim. But at the second trial, Defendant was acquitted of killing the first victim when the State presented the same evidence and theory that it now argues would support Defendant's previous convictions—that Defendant fired the .223 caliber bullets and killed both victims. [BIC 7, 11-12, 15-16] Thus, a jury has already rejected part of the State's most recent theory. The issue before this Court is not whether sufficient evidence supported Defendant's convictions, but rather whether the district court abused its discretion in granting the motion for a new trial. *See Aguilar*, 2019-NMSC-017, ¶ 29 ("[W]hen the appellate court is reviewing a grant of a new trial, the grant can be affirmed as within the trail court's discretion even where the trial court would also have been acting within its discretion to deny the new trial motion.").

**{11}** Because we cannot say that the district court's order is "clearly against the logic and effect of the facts and circumstances of the case," we hold that the district court did not abuse its discretion by finding that the newly discovered evidence will probably change the result. *See id.* ¶ 28 (internal quotation marks and citation omitted).

**{12}** The State also argues under the third factor that the district court erred because the evidence could have been discovered before trial. [BIC 23] The district court found that "the new evidence did not exist until the State sought further testing of its evidence." [3 RP 641] The State does not challenge the district court's finding, but instead argues that Defendant invited the error by choosing to proceed to trial without the results of the ballistic testing when he could have delayed his first trial until the State produced the results. [BIC 23] Although Defendant proceeded to trial without the results, this does not change the fact that the evidence did not exist at the time of the first trial as the result of State negligence. [BIC 1-2; 23] In fact, the evidence would not have been known by Defendant until the district court required the State to submit the evidence for testing. [BIC 1] Nor does the State acknowledge Defendant's argument to the district court that because the State failed to timely test the evidence, he was required to either waive the right to a speedy trial or to proceed without the test results. [3 RP 579; 7-25-2023 CD 1:52:17-1:52:27] Despite the State's argument that Defendant should have waited, under the circumstances of this case, we hold that the district court did not abuse its discretion in finding that the evidence could not have been discovered by the exercise of Defendant's due diligence. *See id.*

**{13}** Because we conclude that the district court did not abuse its discretion when finding the first and third factors, we hold that the district court did not manifestly abuse its discretion when granting Defendant's motion for a new trial based on newly discovered evidence. *Garcia*, 2005-NMSC-038, ¶ 7. We therefore affirm the district court.

**{14}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**